IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:13-cv-2523

NANCY FLEMING,

    Plaintiff,

v.

HEALTH LANGUAGE, INC., a Delaware Corporation, and MARC HOROWITZ, an individual,

    Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff, Nancy Fleming, through her undersigned counsel, Randolph H. Freking and Elizabeth L. ("Booka") Smith, of Freking & Betz, LLC, for her Complaint and Jury Demand against defendants Health Language, Inc. and Marc Horowitz, alleges as follows:

## INTRODUCTION

1. Plaintiff is the former Marketing Communications Specialist for Health Language, Inc. ("HLI" or "the Company"), a Denver based company which manufactures and sells software for the healthcare community.

2. During the entire course of her employment with HLI Plaintiff reported directly to Defendant Marc Horowitz ("Horowitz"), now a Senior Vice President of the Company.

3. Defendant Horowitz created a sexually charged work environment for Plaintiff at HLI that was so hostile and abusive that she ultimately had no choice but to resign.

4. Plaintiff was not the only female employee who was forced to resign as a direct and proximate result of Horowitz's deplorable behavior. The sales and marketing departments at HLI were heavily polluted with discrimination and sexual harassment which had the effect of completely destroying the emotional and psychological stability of many HLI employees, including Plaintiff.

5. HLI was at all times aware of the sexually charged offensive work environment Horowitz created. Despite repeated complaints about Horowitz's behavior, HLI did virtually nothing to try to prevent it.

6. Plaintiff brings this lawsuit to expose and punish HLI and Horowitz for their despicable treatment of Plaintiff and all the other women who were forced to quit their jobs with HLI. Plaintiff's legal claims include intentional violations by HLI of the federal Civil Rights Act and the Colorado Anti-Discrimination Act and intentional infliction of emotional distress against Defendant Horowitz.

7. Plaintiff seeks recovery of monetary damages from both defendants, as well as such other further relief as the Court deems just and proper.

**PARTIES, JURISDICTION AND VENUE**

8. Plaintiff, Nancy Fleming, resides in the City of Aurora, County of Denver, State of Colorado.

9. Defendant Health Language, Inc. (also "HLI" or "the Company") is a Delaware corporation with its principle office and central business headquarters, where Plaintiff worked, at 4600 S. Syracuse Street, Denver, Colorado 80237.

10. According to its website, http://www.healthlanguage.com/, HLI provides software for managing and updating standard and localized healthcare terminology. HLI also offers

clinical content and professional services to enable interoperability, ICD-10 conversion, web-based terminology mapping, and Meaningful Use compliance.

11. HLI employs over 100 employees.

12. At the time of her constructive discharge, Plaintiff was HLI's Marketing Communications Specialist.

13. Defendant Marc Horowitz resides in the City of Castle Rock, County of Douglas, State of Colorado.

14. At the time of Plaintiff's constructive discharge, Defendant Horowitz was a Senior Vice President and essentially third-in-command at HLI. Horowitz was Plaintiff's immediate boss and supervisor.

15. This court also has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 because this lawsuit implicates federal law.

16. Venue is proper in the United States Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) because HLI's executive headquarters are in Colorado and the events giving rise to this lawsuit all occurred in Colorado.

## FACTUAL ALLEGATIONS

17. Plaintiff began work at HLI in October, 2010. Her title was Marketing Communications Specialist. She reported directly to Defendant Marc Horowitz, who at the time was essentially third-in-command of the Company under the CEO and Executive VP, George Schwend ("Schwend"), and under the CFO and Executive VP, Brian McDonald ("McDonald").

18. At all times during the course of Plaintiff's employment by HLI the sales and marketing departments at HLI were heavily polluted with discrimination and sexual harassment

that had the effect of completely destroying the emotional and psychological stability of many HLI employees, including Plaintiff.

19.     Defendant Horowitz was primarily responsible for the harassing, obscene, and derogatory workplace behavior that permeated HLI's sales, marketing and contracting departments, and weighed heavily on many female HLI employees, including Plaintiff.

20.     As just one example of Defendant Horowitz's deplorable behavior, during a marketing meeting during which Plaintiff led a discussion, Horowitz made a series of sexually charged comments, including a remark about "taking it from behind."  He also stated to the group, "Sometimes you have to just get down on your knees and take it like a woman."  When Horowitz made these comments, he looked over at Plaintiff and smiled, before he laughed menacingly.

21.     After Defendant Horowitz made another sexually charged comment at this meeting, he pointed at Plaintiff's upper chest and neck area and remarked that she was blushing; he then derided Plaintiff for blushing.  Other HLI employees were visibly uncomfortable during this meeting because of Horowitz's inappropriate workplace comments.  Plaintiff was extremely uncomfortable as well.

22.     After the marketing meeting concluded, Horowitz asked the question out loud "I wonder if Nancy blushes anywhere else."  Derek Baird ("Baird"), HLI's Vice President of Sales, responded, "Please don't make me find out."

23.     During the course of Plaintiff's employment, a management-level employee in HLI's Sales Department complained to Julie Hoelsken ("Hoelsken"), HLI's Director of Human Resources, about Horowitz's and Baird's behavior.  Hoelsken acknowledged that Horowitz and

Baird's workplace behavior was a problem and indicated that she was trying to address the situation.

24. Notwithstanding Hoelsken's efforts (if any) to "address the situation," Horowitz and Baird's workplace harassment continued. For example, Horowitz continuously made derogatory and sexist remarks and jokes about lesbians.

25. Subsequently, additional complaints were lodged against Horowitz and Baird. This time, Hoelsken's response was that Schwend fully supported Horowitz, and thus it would be impossible to effect any change in Horowitz's workplace behavior. Hoelsken stated that Schwend was Horowitz's "best friend" and that Baird had become Horowitz's "little brother," such that it would be futile to try and effect a change to HLI's work environment.

26. Plaintiff complained on several occasions to McDonald about Horowitz. Other female HLI employees continued to complain to management about Horowitz and Baird, and about HLI's failure to alleviate the hostility and harassment that permeated HLI's work environment.

27. Each and every employee who complained about the hostile and abusive work environment was told that nothing would be done about the situation. These employees were told that they could either deal with the behavior or leave their employment altogether. Two female employees constructively discharged from HLI in the wake of HLI's declaration that nothing would be done. Ultimately, Plaintiff would constructively discharge as well.

28. On several occasions, a male sales manager who previously complained to Human Resources about Horowitz confronted Horowitz and told him the boorish workplace behavior had to stop. But Horowitz did not care. Despite being told he was breaking the law

and violating his co-workers' civil rights, Horowitz continued to denigrate females and subject HLI employees to an abusive work environment.

29.     Defendant Horowitz and HLI acted with malice and with reckless indifference to the civil rights of HLI's employees, including Plaintiff and the other two women who constructively discharged.

30.     In the early part of 2011, Defendant Horowitz threatened to fire the male sales manager who complained.  Horowitz threatened this manager with termination if he did not stop communicating with Hoelsken and other HLI employees regarding his workplace behavior.

31.     Horowitz's mindset is evidenced by "joke" e-mails, which he routinely circulated to HLI executives and employees.

32.     The "joke" e-mails included, among other things, pictures of nude women, movies depicting fornication, PowerPoint presentations depicting fellatio, movies showing Muslim assassinations, and jokes/images denigrating lesbians, gays, Muslims, and other racial groups.   Some of these "joke" e-mails included:

    a. a "joke" e-mail about how stupid Muslims are;

    b. a "joke" about a woman in Muslim attire next to small garbage bags suggesting the garbage bags are her children;

    c. a "joke" e-mail about how not-loving, and not-peaceful Muslims are;

    d. an offensive series of 10 "jokes" about lesbians (the first joke is "What do you call a pantry full of lesbians?  A licker cabinet.");

    e. a series of sexually offensive cartoons that make fun of a dog poking his nose into another dog's rear end, a cartoon poking fun of dogs "licking their balls", a cartoon suggesting a man's birthday wish was a "big, hairy beaver", and cartoons

poking fun of Viagra overdoses, amongst other cartoons;

f. a "joke" e-mail "Emersome nick knockers!" with a picture of a naked woman with extremely large breasts;

g. a "joke" e-mail "Now, who's your buddy?" with a picture of a woman naked from the top up exposing extremely large breasts;

h. a photograph of a naked woman pulling a rope through her genital area and likening it to dental flossing;

i. a "joke" e-mail about how there are "no ugly women just poor women" … ;

j. a "joke" about West Virginia underwire bras with a photograph of an older woman with her large naked breast hanging through the holes of a metal fence;

k. an image of a the lower part of two women's naked bodies connected one-side up, one-down with the phrase "Twice the fun and no bitching!";

l. a series of photographs of an attractive naked woman posing holding driftwood with a comment "it's truly amazing how beautiful a piece of dead driftwood can look in the right setting …"; and

m. a Whorehouse Menu from 1912 listing a menu of options such as "Sitting on prick, shoving stones in and all" for the price of $2.59."

33. Horowitz also circulated to other male HLI executives and employees inappropriate and offensive electronic media, including:

a. Video titled "Al-Queda Massacre": showing more than 20 people being executed under the title "So you think waterboarding is cruel";

7

    b. "Motivational Posters" including pictures and captions denigrating lesbians and overweight women;

    c. "Motivational Posters XI" including pictures denigrating minorities and people with disabilities;

    d. A wip (wmv file) showing a fisherman and a couple engaged in sexual intercourse on a river bank;

    e. "Newbuddyday": PowerPoint show including pictures of naked women in highly compromised positions entitled "Send your buddy some pussy day";

    f. "Profesora de Yoga": PowerPoint showing a woman performing fellatio and being animated such that her eyes bulge and her forehead expands;

    g. "Plutpsouple 12": PowerPoint showing women performing cunnilingus on themselves;

    h. "Bald is beautiful": PowerPoint showing women with shaved vaginas; and

    i. "Juicy fruits": PowerPoint showing "pin-up women" in nude, provocative poses; and T-shirt contest: PDF file showing college women stripping at a nightclub.

34. The male management-level HLI who previously complained to Defendant Horowitz and asked him to be removed from the "joke" email list because they were inappropriate and offensive. Horowitz responded by saying, "how do you have time to talk about things like this . . . with your job you should be too busy to shit." Horowitz then reiterated

that Schwend, Baird and many other HLI employees did not have a problem with the emails; he told the complainant that if he wanted to "fit in" at HLI I should just "shut up and go do [his] job."

35. Defendant Horowitz is not the only employee at HLI who engaged in sexually abusive behavior. Other male HLI executives ridiculed female employees, mocking their appearance, sexuality, and body parts. Other HLI executives also routinely bantered about strippers and/or prostitutes that Defendant Horowitz had encountered during travel related to his work at HLI.

36. HLI was well aware of these employees' abusive behavior.

37. These other HLI employees acted with malice and with reckless indifference to the rights of the civil rights of HLI's employees, including Plaintiff and the other two women who constructively discharged.

38. In response to complaints of sexual harassment HLI has conducted self-serving, one-sided interviews. HLI has also intimidated witnesses and dissuaded them from providing truthful information.

39. Throughout the course of her employment Plaintiff was fearful (reasonably so) that she would be retaliated against if she complained about sexual harassment. Plaintiff was also aware that HLI refused to control Horowitz and that her complaints would be all for naught.

40. From the day Plaintiff began work at HLI, up until the date of her constructive discharge in late May, 2012, Defendant Horowitz routinely abused Plaintiff, treating her in an outrageous manner that is not acceptable in civilized society. Defendant Horowitz's behavior included, but was not limited to:

a. making sexually inappropriate comments about Plaintiff's wardrobe (on one occasion telling Plaintiff she "looked like the transsexual character in Ed Wood" when she wore a certain pink shawl (this comment was made in front of Plaintiff's co-workers);

b. making sexually inappropriate comments to Plaintiff about his own sexual escapades (for example, regaling Plaintiff with a story about how a "hot" woman in Singapore came on to him, stripped down to her garter belt in his hotel room, and that it took everything he had to resist her because he was married);

c. making sexually inappropriate comments to Plaintiff about others (referring to female booth hostesses as "booth babes" ... stating he has to get to Las Vegas early for the HIMSS conference because he "has a date with a pole"... noting that Kim Kardashian was beautiful while cupping his hands in front of his chest to imitate big boobs... the list goes on);

d. making sexually inappropriate comments *knowing* that the comments made Plaintiff extremely uncomfortable (Defendant Horowitz recognized that Plaintiff tended to blink a lot when she got uncomfortable, and he actually would imitate Plaintiff's blinking for her co-workers);

e. sending Plaintiff a racist e-mail about President Obama knowing Plaintiff is a democrat and a supporter of Obama;

f. assigning Plaintiff an overwhelming amount of work, and not giving her any direction regarding how to accomplish the assigned tasks;

  g.  constantly yelling at Plaintiff in front of her co-workers, often using inapprogriate language (the f-word, amongst other bad words);

  h.  frequently calling Plaintiff at night and on the weekends and berating her for not answering the phone;

  i.  repeatedly giving Plaintiff negative feedback about her work performance while simultaneously demeaning her job responsibilities; and

  j.  assigning Plaintiff demeaning tasks that were outside her job description (for example, forcing her to take minutes at sales meetings).

41. In addition, Defendant Horowitz routinely treated Plaintiff far less favorably than her male co-workers. Although Defendant Horowitz also doled out abusive treatment to Plaintiff's male co-workers, Plaintiff was singled out because of her gender.

42. Moreover, Plaintiff was not paid comparably to her male co-workers.

43. Defendant Horowitz's abuse of Plaintiff came to a head in May, 2012, when, without justification or legitimate reason, Defendant Horowitz gave Plaintiff a horrible performance review.

44. Plaintiff went to HLI's Human Resources Director, Julie Hoelsken to complain about Defendant Horowitz's abusive behavior. Hoelsken's response was to tell Plaintiff that HR is powerless to change the behavior of the HLI executives.

45. In late May 2012, Plaintiff resigned from HLI.

46. Any reasonable person standing in Plaintiff's shoes would have felt compelled to resign.

47. Plaintiff had no choice but to resign.

11

48.     At least two other women resigned because of Horowitz's abusive behavior and HLI's refusal to do anything about it.

49.     Plaintiff resigned because HLI and Horowitz through their harassing behavior and illegal discriminatory acts made working conditions so difficult that any reasonable person in Plaintiff's position would have felt compelled to resign.

50.     Plaintiff was constructively discharged.

51.     Immediately after HLI constructively discharged Plaintiff it hired a male to perform all Plaintiff's duties and responsibilities.  HLI gave the male the title of "Marketing Director" and paid him more than Plaintiff.

## FIRST CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e)

52.     Plaintiff restates and incorporates paragraphs 1 through 51 as though fully set forth.

53.     Title VII of the Civil Rights Act prohibits employers from creating a gender based hostile and abusive work environment.

54.     HLI created a gender based hostile and abusive work environment for Plaintiff and her female co-workers.

55.     The hostile and abusive workplace HLI created had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

56.     Under the totality of the circumstances, the gender based hostility and abuse was pervasive or severe enough to alter the terms, conditions, or privilege of Plaintiff's employment.

57. The gender based hostile and abusive work environment was perpetrated primarily by Defendant Horowitz, and included, but was not limited to all the deplorable conduct set forth above.

58. Other HLI employees, including Baird, either participated in creating the hostile and abusive work environment or did nothing to prevent it. It was common knowledge at HLI that you had to put up with or participate in the sexually charged work environment, or quit.

59. Several women, including Plaintiff, were forced to quit.

60. HLI was repeatedly informed of this inappropriate behavior yet failed to exercise reasonable care to prevent and correct it.

61. Plaintiff reasonably attempted to correct this inappropriate behavior but HLI still did nothing to prevent or correct it.

62. HLI's failure to prevent or correct this inappropriate behavior resulted in Plaintiff's constructive discharge.

63. In creating this gender based hostile work environment Defendant HLI and Defendant Horowitz acted with malice and with reckless indifference to the rights of the civil rights of HLI's employees, including Plaintiff and the other two women who constructively discharged.

64. Plaintiff and her female co-workers suffered damages as a direct and proximate result of Defendant HLI and Defendant Horowitz's violation of their federally protected civil rights, in an amount to be proved at trial.

65. Plaintiff filed her gender discrimination Charge with the Equal Employment Opportunity Commission on November 12, 2012. Plaintiff was issued her Notice of Right to Sue Letter (filed herewith as Exhibit 1) on July 12, 2013.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of the Colorado Anti-Discrimination Act -- C.R.S. § 24-34-402)

66. Plaintiff restates and incorporates paragraphs 1 through 65 as though fully set forth.

67. The Colorado Anti-Discrimination Act (the "CADA"), like Title VII, prohibits an employer from creating a gender based hostile work environment.

68. Plaintiff incorporates by this reference all her allegations in support of her first cause of action. These facts also give rise to and support Plaintiff's claim for a violation of the CADA.

## THIRD CAUSE OF ACTION
### (Illegal Gender Discrimination in Violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e)

69. Plaintiff restates and incorporates paragraphs 1 through 68 as though fully set forth.

70. Title VII prohibits discrimination by an employer against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her gender.

71. Plaintiff is female.

72. Plaintiff was repeatedly discriminated against in the workplace on the basis of her gender.

73. Plaintiff was treated much worse than her male co-workers. She was assigned an overwhelming amount of work and was not given any direction in terms of how to accomplish the assigned tasks. She was assigned demeaning tasks which in the early history

of America were traditionally assigned to women.  For example, Plaintiff was assigned to take notes at sales meetings, whereas her male co-workers were encouraged to volunteer and participate and were not required to take any notes.

74. Plaintiff was also paid less than her male co-workers.

75. Plaintiff was given a horrible performance review which had no basis in fact.  None of Plaintiff's co-workers received similar reviews.

76. Plaintiff was subject to adverse employment decisions by HLI because of her gender.

77. Ultimately, Plaintiff was forced to quit.  None of Plaintiff's male co-workers were forced to quit.

78. After Plaintiff was constructively discharged her duties and responsibilities were assigned to a male who was given a better title and a higher salary.

79.  HLI had no legitimate, non-discriminatory reason for treating its male employees better than Plaintiff.

80.  In discriminating against Plaintiff on the basis of her gender Defendant HLI and Defendant Horowitz acted with malice and with reckless indifference to the rights of the civil rights of Plaintiff.

81. Plaintiff suffered damages as a direct and proximate result of Defendant HLI and Defendant Horowitz's violation of her federally protected civil rights, in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Illegal Gender Based Discrimination in Violation of the Colorado Anti-Discrimination Act -- C.R.S. § 24-34-402)**

82. Plaintiff restates and incorporates paragraphs 1 through 81 as though fully set forth.

15

83. The Colorado Anti-Discrimination Act (the "CADA"), like Title VII, prohibits employers from discriminating against female employees on the basis of their gender.

84. Plaintiff incorporates by this reference all her allegations in support of her first cause of action. These facts also give rise to and support Plaintiff's claim for a violation of the CADA.

## FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress/Outrageous Conduct – Against Marc Horowitz)

85. Plaintiff restates and incorporates paragraphs 1 through 84 as though fully set forth.

86. Defendant Horowitz by extreme and outrageous conduct intentionally or recklessly caused Plaintiff severe emotional distress.

87. All the facts showing Horowitz's intentional infliction of emotional distress are set forth above.

88. Defendant Horowitz's extreme and outrageous conduct toward Plaintiff was so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

89. Plaintiff suffered damages as a direct and proximate result of Mr. Horowitz's unlawful behavior in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for Judgment against Defendants, as follows:

a. a compensatory award for her economic damages, including but not limited to back pay and front pay;

b. a compensatory award for her non-economic damages, including but not limited to her emotional distress damages;

      c.      for prejudgment and post-judgment interest at the highest lawful rate;

      d.      for costs of litigation;

      e.      for attorneys' fees;

      f.      for punitive damages; and

      g.      for such other and further relief as the Court deems just and proper.

      h.      **PLAINTIFF HEREBY DEMANDS JURY TRIAL ON ALL ISSUES.**

**RESPECTFULLY SUBMITTED** this 16th day of September, 2013.

    /s/ Elizabeth L. "Booka" Smith
    Randolph H. Freking, Reg. No. 40871
    Elizabeth L. "Booka" Smith, Reg. No. 30412
    FREKING & BETZ, LLC
    999 18th Street, Suite 3000
    Denver, CO 80202
    Tel. (303) 357-2355
    *Attorneys for Plaintiff*

Plaintiff's Address:

14146 E. Hampden Place
Aurora, CO 80014